UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CA-POW! (Citizens Alert: Protect our Waters!), by
Donn Rice, as Co-Chairman,

                              Plaintiff,       DECISION AND ORDER

              -v-                                 10-CV-6035-CJS

THE TOWN OF GREECE, NEW YORK,

                              Defendant.

---

**APPEARANCES**

For Plaintiff:               David J. Seeger, Esq.
                             Law Office of David J. Seeger
                             69 Delaware Avenue Suite 1100
                             Buffalo, NY 14202
                             (716) 856-1536

For Defendant:            Robert B. Koegel, Esq.
                             Remington, Gifford, Williams & Colicchio
                             183 East Main Street Suite 1400
                             Rochester, NY 14604
                             (585) 232-5225

**INTRODUCTION**

    **Siragusa, J.** Plaintiff filed its complaint on January 21, 2010, alleging that Defendant was in violation of the Clean Water Act. On March 1, 2010, Defendant filed a motion (Docket No. 2) to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court scheduled oral argument on the motion for June 24, 2010, at 3:00 p.m. On that same day, Plaintiff filed what he titled "Plaintiff's First Amended Complaint" ("amended complaint") (Docket No. 20) without leave of the Court and without consent by Defendant. Subsequently, on July 1, 2010, Defendant moved to strike the amended complaint and to dismiss the original complaint (Docket No. 22). On July 23, 2010, Plaintiff

cross-moved for leave to file his amended complaint. (Docket No. 25.) For the reasons stated below, Plaintiff's motion for leave to file an amended complaint is denied and Defendant's motion to strike the June 24, 2010, amended complaint is granted, and Defendant's motion to dismiss the original complaint, is likewise granted.

## PROCEDURAL HISTORY

On March 1, 2010, Defendant filed a motion (Docket No. 2) to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that Plaintiff lacked capacity and standing to sue, had sent a defective "notice of intent" letter to sue, and that the complaint failed to state a claim upon which relief could be granted. On March 2, 2010, the Court issued a motion scheduling order (Docket No. 15), ordering, *inter alia*, responding papers to be filed and served on or before April 6, 2010, reply papers to be filed and served on or before May 11, 2010, and for all papers to comply with Local Rule of Civil Procedure 7.1. In its responding papers (Docket No. 16), Plaintiff failed to include a memorandum of law as required pursuant to Local Rule of Civil Procedure 7.1(e). Plaintiff filed only the cover page of a memorandum. In its reply papers (Docket No. 17), filed May 10, 2010, Defendant alerted Plaintiff and the Court that Plaintiff had not filed a memorandum of law and further informed the Court that Plaintiff's attorney had a history of not filing memoranda of law.

Although it was on notice as of May 10, 2010, that its responding papers only included the memorandum cover sheet, instead of filing a complete memorandum of law, Plaintiff waited until June 24, 2010, seventy-six minutes before oral argument was to be had on the motion to dismiss, to file an amended complaint. (Docket No. 20.) As indicated above, Defendant then moved to strike the amended complaint and to dismiss the original

complaint (Docket No. 22) and Plaintiff cross-moved for leave to file the amended complaint. (Docket No. 25.)

## STANDARDS OF LAW

*A. Leave to Amend Complaint*

The standard for granting a party leave to amend its pleadings is well established. Federal Rule of Civil Procedure 15(a)(2) reads, in relevant part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." For almost fifty years, the Supreme Court's interpretation of Rule 15(a), as set forth in *Foman v. Davis*, 371 U.S. 178 (1962), has controlled. In *Foman*, the Court wrote:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, *etc.*—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182. In a recent decision, the Court of Appeals for the Second Circuit determined, that "leave to amend would be futile because Mortimer's proposed amended complaint did not cure the original complaint's deficiencies." *Mortimer Off Shore Servs. v. Fed. Republic of Germany*, Nos. 08-1783-cv (L), 08-2358-cv (XAP), __ F.3d __, 2010 WL 2891069, 14, 2010 U.S. App. LEXIS 15235, 4 (2d Cir. 2010). Thus, while leave to amend should generally be freely granted, when the amended complaint does not remedy the flaws of the original complaint, or the decision to amend was made in bad faith, leave to amend should not be granted.

*B. Motion to Dismiss*

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," and "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986))*.*

*C. Capacity to Bring a Lawsuit*

The Federal Rules of Civil Procedure determine who may bring suit in Federal Court. Rule 17(b), which defines the capacity of an unincorporated association to bring suit, states in pertinent part as follows:

> Capacity to sue or be sued is determined as follows...(3) for all other parties, by the law of the state where the court is located, except that...[an] unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws.

Fed. R. Civ. P. 17(b). In *Arbor Hill Concerned Citizens Neighborhood Assoc. v. City of Albany*, 250 F. Supp. 2d 48, 61 (N.D.N.Y. 2003), the district court clearly explained that Rule 17 cannot be invoked to grant a plaintiff capacity to sue when State law already provides a means for an unincorporated association to sue:

> It is not in dispute that plaintiff is suing "for the purpose of enforcing for or against it a substantive right existing under the … laws of the United States." What is in dispute is whether that fact excuses plaintiff from heeding the provisions of New York State law dealing with the mechanics of a lawsuit

involving an unincorporated association. In other words, it must be determined whether subsection (1) is an exception, as plaintiff terms it, to the rule immediately preceding it—that capacity to sue is to be determined by the law of the state in which the district court sits—or whether it applies only when plaintiff is seeking vindication of rights created by federal law and the law of the state in which the district court sits does not grant plaintiff capacity to sue.

It is here found that the latter interpretation controls. One need look no further than the clear language of Fed. R. Civ. P. 17(b).[1] Immediately following "partnership or other unincorporated association" is a comma and then the phrase "which has no such capacity by the law of such state." Common rules of grammar and syntax tell us that the use of the comma and then the immediate use of the word "which" evinces an intent to have the phrase refer to the immediately preceding noun—in this case, the noun "unincorporated association." There are no words indicative of an alternative or of an intent to make the phrase optional.

Further, if plaintiff's interpretation were correct, the phrase would be mere surplusage. It would not be needed. The language would simply read "except that a partnership or other unincorporated association may sue or be sued in its common name for the purpose of enforcing for or against it a substantive a substantive right existing under the Constitution or laws of the United States."

*Arbor Hill*, 250 F. Supp. 2d at 61.

Pursuant to N.Y. General Associations Law § 12,

An action or special proceeding may be maintained, *by the president or treasurer* of an unincorporated association to recover any property, or upon any cause of action, for or upon which all the associates may maintain such an action or special proceeding, by reason of their interest or ownership therein, either jointly or in common. An action may likewise be maintained by such *president or treasurer* to recover from one or more members of such association his or their proportionate share of any moneys lawfully expended by such association for the benefit of such associates, or to enforce any lawful claim of such association against such member or members.

---

[1] While the language of Rule 17 was amended in 2007 as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules, the changes were intended to be stylistic only. Advisory Committee Notes, Fed. R. Civ. P. 17, 2007 Amendment.

N.Y. Gen'l Assoc. Law § 12 (McKinney's 1994) (emphasis added). Because the statutory provision is generally viewed as "a pleading and procedural aid," and not as "denying a right of action to an association lacking officers bearing such titles," suit can be brought in the name of "an officer who is the functional equivalent" of a president or treasurer. *Arbor Hill*, 250 F. Supp. 2d at 61–62 (internal citations omitted).

If an unincorporated association has a president or treasurer, title alone is statutorily sufficient. The Court need not inquire into their specific functions, or whether they are appropriate representative parties. If an unincorporated association has no president or treasurer, the Court must examine the organization's structure to determine if the person who commenced the action is an elected or *de facto* officer performing equivalent functions and responsibilities as a president or treasurer. *Id.* at 62 (citing *Locke Associates, Inc. v. Foundation for the Support of the United Nations*, 173 Misc. 2d 502, 504). Therefore, only in the event that an unincorporated association has no president or treasurer do the specific functions of the person in whose name the suit is brought require delineation in the pleadings.

## ANALYSIS

### A. Motion to Strike

Defendant first moves to strike Plaintiff's June 24, 2010, amended complaint. In his affirmation in support of Plaintiff's motion to amend the complaint (Docket No. 25-1, ¶¶ 6, 7), Plaintiff's counsel, candidly concedes that leave of the Court was required to file and serve the June 24, 2010, amended complaint, he does not oppose Defendant's motion to strike it. Accordingly, the Court grants Defendant's motion to strike the June 24, 2010, amended complaint.

*B. Motion for Leave to Amend the Complaint*

The Court determines that allowing Plaintiff to fine an amended complaint would be futile. The amended complaint, which Plaintiff now seeks leave to file, fails to cure the deficiencies of the original complaint.

Neither Plaintiff's original complaint, nor its proposed amended complaint, were filed by a person with capacity to represent an unincorporated organization in New York State. Plaintiff's proposed amended complaint alleges, *inter alia*, the following: CA-POW! Is an unincorporated association, Donn Rice ("Rice") is Co-Chairman of CA-POW!, and fulfills the duties of president "as that word means under the law of the State of New York pertaining to unincorporated associations," and that prior to this suit being commenced, CA-POW!'s members met and recognized that then-president, Thomas Clayton, declined continued membership, and resolved to appoint Rice as "Co-Chairman with the powers and duties customarily associated with being president of the association." (Proposed Amended Compl. ¶¶ 14, 15 & 17.) Because New York General Associations Law § 12 grants unincorporated associations capacity to sue through their president, treasurer, or equivalent officer, Federal Rule of Civil Procedure 17 does not bestow capacity on CA-POW! to sue in its common name. *Arbor Hill*, 250 F. Supp. 2d at 61.

In its Memorandum of Law in support of its motion to amend, Plaintiff cites a case, *Klinghoffer v. SNC Achille Lauro Ed. A.G.*, 739 F. Supp. 854, 865–66 (S.D.N.Y., 1990), and argues that it stands for the proposition that Federal law, rather than the law of the state in which the court sits, applies. However, Plaintiff's reliance on *Klinghoffer* is misplaced. There the Southern District ultimately determined that "Italian rather than U.S. federal law applies," therefore any statements made about U.S. federal law are dicta. *Klinghoffer v.*

*S.N.C. Achille Lauro Ed Altri-Gestione etc.*, 795 F. Supp. 112, 116 (S.D.N.Y., 1992) (on remand from *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.*, 937 F.2d 44, 53 (2d Cir. 1991)).

Accepting as true the allegation that the president of CA-POW!, Thomas Clayton, is no longer part of that organization, and given the fact that the Court does not have knowledge of any person filling that position, the plain reading of the proposed Amended complaint is that CA-POW! does not have an individual serving in the office of president. As stated above, Rice's title is that of "Co-Chairman." Thus, because Rice is neither a president, nor a treasurer, the Court must determine if he is, nevertheless, the functional equivalent of a president or treasurer. *Arbor Hill*, 250 F. Supp. 2d at 61–62.

Plaintiff's amended complaint does not delineate the functions performed by Co-Chairman Rice. Plaintiff has not made any factual allegations regarding Rice's functions or tasks, only asserting, in conclusory fashion, that he, "fulfills the duties of president as that word means under the law of the State of New York pertaining to unincorporated associations." (Proposed First Amended Compl. ¶ 15.) As stated in *Twombly*, the Court is not bound to accept as true legal conclusions made in a complaint. *Twombly*, 550 U.S. at 555. The assertion in paragraph 15 is a mere legal conclusion. Furthermore, the very use of the term "Co-" before Chairman implies that Rice is not entitled to sole authority in whatever position he occupies with Plaintiff.[2] Consequently, the Court cannot determine

---

[2] "[C]o- has come in English to be a living formative, the use of which is no longer restricted to words beginning with a vowel, but extended to all words of analogous kinds, including native English or other words, as well as those from Latin. The general sense is 'together', 'in company', 'in common', 'joint, -ly', 'equal, -ly', 'reciprocally', 'mutually'. It combines (like L. com-, con-, co-) with verbs, adjs., adverbs, and ns." Oxford English Dictionary, Second Edition (1989).

on the basis of the allegations in the amended complaint that Rice is the functional equivalent of a president or treasurer.

Plaintiff's amended complaint is not brought by the president, treasurer, or equivalent officer as required by New York General Associations Law § 12. The amended complaint does not provide any factual allegations to support the conclusory allegation that the Co-Chairman is equivalent to CA-POW!'s president. Accordingly, allowing the amendment would be futile; both the complaint and the proposed Amended complaint fail to establish that Rice has the capacity to sue on CA-POW!'s behalf.

Apart from the futility of Plaintiff's motion to amend, the Court determines that Plaintiff's application is brought in bad faith. As the court explained in *GSS Properties, Inc. v. Kendale Shopping Center, Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988) (Eliason, U.S.M.J.):

> Bad faith amendments are those which may be abusive or made in order to secure some ulterior tactical advantage. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1487 n. 63 (1971 and 1987 Supp.). Generally, when a plaintiff withholds his true position from his opponent, especially when done for some ulterior purpose, the Court may view the action as having a bad faith motive unless satisfactory explanation clearly shows otherwise. Parties have an obligation to introduce, at the earliest stage of the litigation as possible, the matters upon which they want to rely in supporting their claim or defense. 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1488 at 444 (1971). In the instant case, the Court finds bad faith in plaintiff's withholding facts clearly known to it prior to the filing of the complaint and then moving to amend the complaint where the evidence suggests that plaintiff had an ulterior purpose of either attempting to force defendant to settle or punishing defendant for failing to settle. The blatant nature of the delay combined with this finding of bad faith persuades the Court to exercise its discretion and deny the motion to amend the complaint.

*Id*. 119 F.R.D. at 381.

In the case before the Court, Plaintiff's attorney has knowingly failed to abide by Local Rule of Civil Procedure 7.1. At oral argument, the Court read to counsel the allegations by opposing counsel:

> Ca-POW's attorney has repeatedly failed to comply with Rule 7.1(e) in other civil actions. In *Lester vs. M&M Knopf Auto Parts*, the Western District of New York found that Mr. Seeger's submissions failed to comply with local Rule 7.1(e) because they did not include an answering memorandum. In *Allens Creek/Corbetts Glen Preservation Group vs. Caldera*, 88 F. Supp 2d 77 at 81, affirmed by the Circuit, this district court found that Mr. Seeger had not filed any memorandum of law as required by rule 7.1(e) until well after six months after the opposing parties filed summary judgment motions. *In Neighbors Organized to Save Amherst's Wetlands*, Lexis 101376, another Western District of New York case, this court, citing Local Rule 7.1(e), admonished Mr. Seeger for filing a 29-page brief containing no case law or other pertinent legal authority. In *Lewis vs. FMC Corp.*, Lexis 76274, the Court granted a motion to strike the summary judgment motion papers submitted by Seeger in part because his memorandum of law contained no meaningful factual or legal argument in violation of the spirit of Local Rule 7.1(e). So I know you're familiar with the rule because you've been told about it on numerous times. So explain to me why being familiar with the rule would you ignore the requirement of filing a memorandum of law.

Transcript, *CA-POW! v. Town of Greece, NY*, 10-CV-6035 (Jun. 24, 2010) (Docket No. 27), at 3.) Plaintiff's counsel eventually responded by stating:

> MR. SEEGER: Okay, your Honor. I wish in May I had done one of those things that your Honor had just mentioned. I had drafted a memorandum of law, I haven't filed it. For some reason only the cover page was done. I did not realize that until Mr. Koegel submitted his affidavit. Frankly I took that as a very uncivil personal assault on me.

(*Id*., at 4.) Plaintiff's counsel admitted that he has been practicing law for twenty-nine years and has had roughly 100 cases in the district court over the last twelve years. (*Id*., 3–4, 10.)

On May 10, 2010, Defense counsel informed the Court, and Plaintiff, that Plaintiff had failed to include a memorandum of law with its papers in opposition to Defendant's motion to dismiss, a violation of Local Rule of Civil Procedure 7.1(e). (Docket No. 17-4, at

2–3). Plaintiff's counsel waited approximately 45 days between being alerted to his failure to file a memorandum of law and the scheduled date for oral argument on the motion to dismiss. During that time, he neither contacted the Court or attempted to remedy the omission. This despite his contention at oral argument that he had already drafted a memorandum of law. (Transcript, at 4.)

Compounding his omission, Plaintiff's counsel filed an amended complaint with the Court seventy-six minutes before both parties were due in court for oral argument on Defendant's motion to dismiss. (Notice of Electronic Filing (Docket No. 20) June 24, 2010, 1:44 p.m.) Defendant was served with the amended complaint approximately one hour before oral argument was to commence. (Docket No. 27 p. 7, 12-16). Moreover, Plaintiff's counsel claimed to have spent dozens of hours doing thorough research for CA-POW!'s amended complaint, and represented that the amended complaint was filed as a matter of right. (Transcript, at 6–7.) However, Federal Rule of Civil Procedure 15 was amended in December 2009, limiting the window within which a party may amend its pleadings as a matter of right to twenty-one days after the filing of either a responsive pleading, or a motion to dismiss. In his Affirmation attached to CA-POW!'s motion for leave to file an amended complaint, Plaintiff's counsel stated, "Affiant recognizes that leave of the Court is required under the amended rule to file and serve Plaintiff's Amended complaint…." (Docket Number 25-1, at 2.)

During the June 24, 2010, oral argument on the motion to dismiss, the Court questioned Plaintiff's counsel about his actions and omissions. The Court asked counsel three different times why he waited until an hour before oral argument to file an amended complaint, and received different answers:

[THE COURT:] So I know you're familiar with the rule because you've been told about it on numerous times. So explain to me why being familiar with the rule would you ignore the requirement of filing a memorandum of law….

MR. SEEGER: And that was my foolish mistake, your Honor. And I did, frankly, I wasn't sure what to do….

THE COURT: Why would you wait? Because I don't have it, I'm obviously operating -- why would you wait until an hour before oral argument to file an amended complaint? Explain that to me.

MR. SEEGER: My father died when that memorandum was due before Judge Larimer.

THE COURT: I'm sorry about your loss.

MR. SEEGER: And that is why that Allens Creek memo of law was not filed and I was upset. The other—

THE COURT: When did your father pass away?

MR. SEEGER: 1999, October, eleven years ago. And I'm being faulted now by Mr. Koegle for that.

THE COURT: Wait a second. Your father died eleven years ago?

MR. SEEGER: The Allens Creek litigation, it was from 1999.

THE COURT: I'm not talking about the Allens Creek litigation, we're talking about this litigation. Why did you wait until an hour before this litigation to argue to file an amended complaint?

MR. SEEGER: I was personally distressed and now Mr. Koegel had, in my view, attacked me. And believe me, I do have a thick skin, but I didn't know what to do. I resolved every single one of his concerns about my complaint through a well drafted thoroughly researched amended complaint that provides extensive details, including EPA studies, all admissible, even though this is not a summary judgment motion, I might add, to shore up and substantiate each and every concern that has been brought concerning whether or not Mr. Rice is president, whether or not—

THE COURT: I understand that and I'm not suggesting—again, I'm not suggesting you couldn't do that. I want to hear you correctly, that you waited until an hour before because you were ticked off at counsel because he questioned your integrity, is that what I'm hearing?

MR. SEEGER: No.

THE COURT: Then you didn't answer my question. Why did you wait until an hour before argument to file this and waste my time and counsel's time?

> MR. SEEGER: I was toying with the decision whether to amend or whether to ask your Honor for permission. I opted to amend. I spent dozens of hours on doing the research to complete the amendment. I apologize it was done today, it was a big project.

(Transcript, at 8:6–9:24, 3:11–14, 5:9–10.)

Plaintiff's counsel's contentions that he was unsure what to do, or that he was "toying with the decision" to seek leave to amend, or that his father died eleven years ago, do not contain the ring of truth. Furthermore, the Court finds it unbelievable that an experienced attorney, realizing he inadvertently failed to file a memorandum of law as required by Local Rule 7.1(e), a rule about which he has been chastised on four other occasions for similar omissions, would make no effort to file his already drafted memorandum of law, or otherwise remedy the error. Combined with the amended complaint's lack of support for the legal conclusion that a co-chairman is the equivalent of a president for the purposes of capacity to sue, the Court finds that Plaintiff's counsel has acted in bad faith by moving to amend. Accordingly, as a result of futility and bad faith, the Court denies the motion to amend and grants Defendant's motion to dismiss. *See Foman v. Davis*, 371 U.S. at 182.[3]

Defendant has also requested an award of attorneys' fees. It has not, however, provided the Court with a legal basis for an award, or a calculation of what a reasonable fee would be in this case. Accordingly, that motion is denied without prejudice to bringing a separate application for an award of attorneys' fees.

---

[3] In view of the Court's determination, above, it need not address Defendant's other grounds.

## CONCLUSION

Accordingly, the amended complaint filed on June 24, 2010, is stricken, Plaintiff's motion to amend is denied on the basis of futility and bad faith, and the original complaint is dismissed, because Co-Chairman Rice, the named proponent of the lawsuit, has not shown his capacity to sue on behalf of CA-POW!

IT IS SO ORDERED.

Dated: September 14, 2010
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge